# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JAMES KEVIN MOREE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 19-0194-WS-M |
| | ) |
| WELLS FARGO BANK, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the following motions: (1) the motion of defendant Wells Fargo Bank, N.A. ("Wells Fargo") to dismiss, (Doc. 4); (2) the motion of defendant Specialized Loan Servicing, LLC ("Specialized") to dismiss, (Doc. 11); (3) the plaintiff's motion to remand, (Doc. 13); and (4) the plaintiff's motion "to find judgment." (Doc. 15).

The defendants removed this action from state court based on diversity of citizenship. Diversity jurisdiction plainly exists: the plaintiff is a citizen of Alabama, the defendants are citizens of South Dakota and Australia, respectively, and the complaint explicitly demands recovery in excess of $75,000, exclusive of interest and costs. (Doc. 1 at 2-3; Doc. 1-2 at 6, 8). Although the plaintiff's motion is styled as one to remand, it does not identify any jurisdictional or procedural defect with removal, and none exists. Accordingly, the motion to remand is **denied**.

The plaintiff's second motion seeks entry of default and default judgment against Specialized for failure to respond to the complaint in the time allowed by law. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," it is subject to entry of default. Fed. R. Civ. P. 55(a). But a defendant is under no obligation to plead or otherwise defend until

and unless it is "served with the summons and complaint." *Id*. Rule 12(a)(1)(A)(i); *accord Securities and Exchange Commission v. Wright*, 261 Fed. Appx. 259, 261 (11th Cir. 2008). Thus, "[b]efore a default can be entered, … the party must have been effectively served with process." 10 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2682 at 14 (3rd ed. 1998).

Specialized argues, correctly, that good service of process was never effected on it. (Doc. 18). The plaintiff attempted to serve Specialized by certified mail directed to the entity at a post office address; no individual recipient was identified. (Doc. 1-2 at 36). Alabama law is clear that "service on a corporation or business entity cannot be perfected by certified mail addressed merely to the entity itself." *Ex parte Lereta, LLC*, 226 So. 3d 140, 145 (Ala. 2016). In addition, by federal law a defendant is provided a minimum of seven days following removal in which to file a responsive pleading. Fed. R. Civ. P. 81(c)(2)(C). Removal was accomplished on April 15, 2019, and Specialized answered the complaint on April 22, 2019, seven days later. (Doc. 2). For both these reasons, the plaintiff's motion for entry of default and default judgment is **denied**.[1]

The *pro se* complaint is not a model of clarity and consists chiefly of documents rather than allegations, but the general drift is as follows. The plaintiff borrowed money from Wells Fargo or its predecessor and gave Wells Fargo a note and mortgage. In October 2016, the plaintiff became a "private banker," reflected by his receipt of a certificate from the Private Banker National Banking Association ("the Association"). The Association authorized the plaintiff to create promissory notes to pay off his debts, with the notes purportedly issued against the federal government's obligations and purportedly constituting legal tender and United States currency. (Doc. 1-2 at 26-27).

---

[1] Specialized accuses the plaintiff of engaging in "delusional rants" and of "living in a pure fantasy world." (Doc. 18 at 1). Such *ad hominem* arguments are not permitted in this Court.

In November 2016, the plaintiff as private banker issued a promissory note, by which he promised to pay Wells Fargo the amount of $242,000, to be paid in monthly installments of $1,400 against the obligations of the United States to that part of the public debt due its principals and sureties. The note included the following language:

> After acceptance and not returned no later than the second
> banking day after receipt, Holder has accepted this payoff
> and full settlement and discharge of this debt by acquiescence
> under FRCP, rule 8 and the Administrative Act of 1946.
> The payment or payoff is to be obtained on this day from
> the ISSUER at 5100 Zimco Road Grove Hill, Alabama 36451.

(Doc. 1-2 at 20, 24). The plaintiff mailed the note to Wells Fargo's CFO, along with a cover letter confirming that the note was in "full satisfaction of the claimed loan" to the plaintiff. (*Id*. at 21, 25).

Sometime later, the plaintiff wrote the CFO asserting that: Wells Fargo failed to appear on his doorstep on December 7, 2016 to pick up a check for $242,000, as specified by the plaintiff's note; that this failure resulted in Wells Fargo's acceptance of the plaintiff's note as a new contract; that, by this new contract, the plaintiff paid off the original note with his note, resulting in a zero balance on the original loan; and that Wells Fargo undoubtedly had traded the plaintiff's note at its face value and thereby had been paid in full for the plaintiff's underlying debt. (Doc. 1-2 at 22).

The only cause of action alleged in the complaint is against Wells Fargo for breach of contract. (Doc. 1-2 at 6, 7, 8, 10, 11, 12, 14, 15, 16). The contract at issue is a "bilateral mortgage payoff contract" allegedly formed by the plaintiff's presentation of his note and Wells Fargo's failure to reject it in the manner and within the time specified by the plaintiff in the note; the breach is alleged to consist in Wells Fargo's continued demand for payment of the original debt and in its transfer of the original note and mortgage to Specialized. (*Id*. at 7, 11, 15; Doc. 13 at 2).

3

The complaint and the plaintiff's note reference, among other statutes, Public Law 73-10. (Doc. 1-2 at 19, 24). This statute, pursuant to which the United States went off the gold standard, is the fount of many an "untenable legal theory," *Wilkerson v. Gozdan*, 2014 WL 4093279 at *4 (M.D. Ala. 2014), and in an abundance of caution Wells Fargo addresses these theories. (Doc. 4 at 4-8). The plaintiff, however, expressly disavows any "vapor money" theory, (Doc. 13 at 1), and while his letter to Wells Fargo's CFO mentions "redemption," (Doc. 1-2 at 22), he plainly does not invoke redemption theory. *See Wilkerson*, 2014 WL 4093279 at *5 (describing this theory). Any other theory the plaintiff might envision based on Public Law 73-10 (though he asserts none) would be equally bankrupt, as reflected in *Wilkerson* and cases cited therein.

The plaintiff's actual claim is the more mundane one that he extended an offer to Wells Fargo via his promissory note, which offer Wells Fargo accepted by inaction. Pursuant to this new contract, the original debt was paid off and thereby terminated and/or canceled, rendering efforts to collect the debt or to transfer the debt instruments breaches of the new contract. (Doc. 1-2 at 22). The plaintiff, in short, asserts a novation or substituted contract. *See generally Safeco Insurance Co. v. Graybar Electric Co.*, 59 So. 3d 649, 656 (Ala. 2010) (identifying the elements of a novation or substituted contract and the difference between them).

"The basic elements of a contract are an offer and an acceptance, consideration, and mutual assent to the essential terms of the agreement." *Stacey v. Peed*, 142 So. 3d 529, 531 (Ala. 2013) (internal quotes omitted). Wells Fargo argues that, assuming the plaintiff's note constituted an offer, Wells Fargo as a matter of law did not accept the offer. (Doc. 4 at 9-10). The Court agrees.

Certain contracts, as a matter of law, cannot be formed unless the offeree demonstrates its assent by signature. When a signature is not required or presented, there must be "other external and objective manifestations of mutual assent." *Ex parte Rush*, 730 So. 2d 1175, 1178 (Ala. 1999). Such manifestations can be verbal or written, and "[c]onduct of one party from which the other may

reasonably draw the inference of assent to an agreement is effective as acceptance." *Id*. The plaintiff does not allege a signature or some other written or verbal manifestation of acceptance of his offer. Nor does he assert that Wells Fargo engaged in any affirmative conduct from which its acceptance of the offer could be deduced. Instead, he relies on Wells Fargo's failure to appear at his doorstep on December 7, 2016 to collect the plaintiff's check for $242,000 as establishing the defendant's acceptance of the offer represented by the plaintiff's note. (Doc. 13 at 2).

"We are not aware of any authority for the proposition, that mere delay – mere inaction, can amount to an acceptance of a proposal to enter into a contract. The opposite, is the true doctrine …." *Alabama Gold Life Insurance Co. v. Mayes*, 61 Ala. 163, 168 (Ala. 1878). "Generally speaking, an offeree has a right to make no reply to offers, and his silence and inaction cannot be construed as an assent to the offer …." *Brunswick Corp. v. Sittason*, 167 So. 2d 126, 127 (Ala. 1964) (internal quotes omitted); *accord Denson v. Kirkpatrick Drilling Co*., 144 So. 86, 91 (Ala. 1932) ("[T]he general rule precludes acceptance by mere silence and inaction, as generally speaking an offeree has a right to make no reply to offers, and his silence and inaction cannot be construed as an assent to the offer.") (internal quotes omitted). As a matter of law, the plaintiff cannot establish an acceptance under the general rule.

"This [general] rule is of course subject to exceptions." *Sittason*, 167 So. 2d at 127 (internal quotes omitted); *accord Denson*, 144 So. at 91. The question is whether the plaintiff's allegations implicate any of these exceptions.

"If the relations between the parties have been such as to give to silence the significance of an assent to the offer, the offeree's silence may amount to an implied acceptance." *Sittason*, 167 So. 2d at 127 (internal quotes omitted). The plaintiff and his complaint identify no history of dealings between himself and Wells Fargo suggesting that Wells Fargo could or did accept the plaintiff's alleged

5

offer by inaction. On the contrary, the plaintiff insists that Wells Fargo has for ten years stubbornly insisted on payment on the original note. (Doc. 13 at 2).

"[I]f the conduct of the offeree is such as to lead the offeror to believe that the offer has been accepted, there may be an acceptance by estoppel." *Sittason*, 167 So. 2d at 127 (internal quotes omitted). The plaintiff identifies no such conduct; on the contrary, he alleges that Wells Fargo continued to insist that he make payments under the original note, (Doc. 1-2 at 15), conduct affirmatively reflecting that the offer had not been accepted.

"There are exceptions to this general rule, as where the written offer on its face does not show that the signature of the offeree is contemplated as essential to a binding acceptance, but is such as contemplates silence and nonaction as an acceptance, *and* is made under circumstances requiring the offeree to speak …." *Denson*, 144 So. at 91 (emphasis added). The "circumstances" identified by the *Denson* Court as "requiring the offeree to speak" are the same ones sufficient to create an acceptance by estoppel under *Sittason*: prolonged retention of tendered goods or services without objection or response,[2] which circumstances do not exist here.[3]

What the plaintiff insists is that he could unilaterally place the onus on Wells Fargo to speak or act by the simple expedient of stating that he would treat silence or inaction as acceptance. That is, he claims the right to negate clear

---

[2] The *Denson* Court cited only two cases for the quoted proposition, both of which fall in this category. *See Manufacturers' & Merchants' Inspection Bureau v. Everwear Hosiery Co.*, 138 N.W. 624 (Wis. 1912); *Hobbs v. Massasoit Whip Co.*, 33 N.E. 495 (Mass. 1893).

[3] As noted, Wells Fargo continued to insist on payment under the original note. Moreover, unlike in the cases recognizing this exception to the general rule, the plaintiff did not *improve* Wells Fargo's position by sending *additional* goods or services, as might reasonably trigger a duty to respond; instead, the plaintiff sent Wells Fargo a note that would at best (assuming that a private note purportedly payable out of public funds has any value) *substitute* for the original note, leaving Wells Fargo no better off (probably worse off) and thus not triggering a duty to affirmatively reject the plaintiff's offer.

Alabama law preventing silence and inaction from constituting acceptance except in certain narrow circumstances not presented here. The plaintiff identifies no legal authority for his position, which is easily refuted. "[T]he offeror cannot, merely by indicating that it will take silence to mean assent, cast the burden to speak on the offeree, and the offeree may keep silent if it chooses without becoming liable on an express contract." 2 Williston on Contracts § 6.53 (4th ed. 2012). The plaintiff's position is even weaker, because he did not purport merely to require Wells Fargo to speak or act in a manner of Wells Fargo's choosing. Instead, he purported to require Wells Fargo to take a specific, time-intensive action in order to avoid a deemed acceptance of the plaintiff's offer: travel across Alabama to his residence[4] on a precise but undisclosed date.[5]

Because the complaint demonstrates that the plaintiff as a matter of law cannot establish that Wells Fargo accepted any offer represented by the plaintiff's note, Wells Fargo's motion to dismiss is due to be granted.

As Specialized notes, (Doc. 11), the complaint alleges no cause of action against it; on the contrary, the complaint's only allegation regarding Specialized is that it "unknowingly accepted" the original note and mortgage from Wells Fargo. (Doc. 1-2 at 11). Any imagined liability of Specialized based on Wells Fargo's alleged breach of contract is doomed by the absence of such a contract. Accordingly, Specialized's motion to dismiss is due to be granted.[6]

---

[4] There is no Wells Fargo branch in Grove Hill, and the closest branch appears to be in Monroeville, some 35-40 miles away.

[5] In his brief, the plaintiff says he allowed Wells Fargo a period of 30 days within which to come to his home and retrieve a check. (Doc. 13 at 2). His letter to the CFO, however, which is part of his complaint, states that Wells Fargo had to come to his home "on" December 7, 2016. (Doc. 1-2 at 22). And the note itself, which is also part of his complaint, states that Wells Fargo had to appear "on this day," with no date identified other than November 4, 2016 (the date the plaintiff issued the note). (*Id*. at 20).

[6] Specialized purports to bring a counterclaim based on violation of Rule 11(b). (Doc. 2 at 5-6). Requests for sanctions under Rule 11 must be brought by motion, not by counterclaim. Fed. R. Civ. P. 11(c)(2). Moreover, even a motion under Rule 11 cannot

"When it appears that a pro se plaintiff's complaint might state a claim if more carefully drafted, the district court should give him an opportunity to amend his complaint instead of dismissing it." *Higdon v. Fulton County*, 746 Fed. Appx. 796, 801 (11th Cir. 2018). No opportunity to amend is required "where amendment would be futile." *In re: Kachkar*, ___ Fed. Appx. ___, 2019 WL 1567760 at *6 (11th Cir. 2019). For reasons stated above, the plaintiff cannot plead a legal acceptance of his purported offer; accordingly, amendment would be futile and need not be allowed.[7]

For the reasons set forth above: the plaintiff's motions are **denied**; the defendants' motions to dismiss are **granted**; and Specialized's deemed motion for sanctions is **denied**. This action is **dismissed with prejudice** and without leave to amend. Judgment shall be entered accordingly by separate order.

DONE and ORDERED this 7th day of June, 2019.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

be filed until at least 21 days after the movant has served its opponent with the motion, *id.*, and Specialized does not assert that it served the plaintiff with its counterclaim 21 days before it was filed. For both these failures to comply with governing procedure, Specialized's request for sanctions must be rejected. *E.g., Macort v. Prem, Inc.*, 2005 WL 8151794 at *5 (11th Cir. 2005); *Mitchell v. Osceola Farms Co.*, 408 F. Supp. 2d 1275, 1280 (S.D. Fla. 2005). The counterclaim, construed as a motion for like relief, is thus **denied**.

[7] The plaintiff's brief suggests a claim for "selling stolen property," that is, transfer of the original note to Specialized. (Doc. 13 at 2). No such claim is pleaded in the complaint, and any such claim would be futile, since a necessary predicate would be the existence of a new contract superseding the original so as to render transfer of the original note and mortgage improper. As shown in text, the plaintiff as a matter of law cannot establish such a contract.